CTJ MC

ORIGINAL



FILED
U.S. DISTRICT COURT
NORTHERN DIST. OF TX
FT. WORTH DIVISION

2015 JUL 15 PM 3:08

CLERK OF COURT

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| V. | § | No. 4:15-CR-00152-A |
| | § | |
| CELESTE MONET BLAIR (09) | § | |

## DEFENDANT (09) CELESTE BLAIR'S WRITTEN RESPONSE TO THE COURT'S ORDER DATED JULY 9, 2015 (DOCUMENT 98)

**TO THE HONORABLE JOHN McBRYDE, UNITED STATES DISTRICT JUDGE:**

**Comes now**, Defendant (09) Celeste Monet Blair, ("Ms. Blair"), and files this written response to the Court's order dated July 9, 2015, and shows:

### Chronology of Relevant Documents Filed

June 30, 2015: Ms. Blair filed a Disclosure of Prior Representation and Motion for Judicial Determination in this case: 4:15-CR-00152-A. (Document 86).

July 1, 2015: The Court ordered the government to respond to said disclosure and motion by no later than 4:00 p.m. on July 7, 2015. (Document 87).

July 6, 2015: Shawn Smith ("AUSA Smith"), the Assistant United States Attorney assigned to this case, filed the government's response (Document 91).

---

No. 4:15-CR-00152-A(09):  United States v. Celeste Monte Blair
Defendant (09) Celeste Blair's Written Response to the Court's Order Dated July 9, 2015
(Document 98)
Page 1 of 39

July 9, 2015: The Court issued an order concluding that "in an abundance of caution there should be a substitution of the court-appointed attorney representing Blair unless after full disclosure to Blair by her current court-appointed attorney, Catherine Dunnavant ("Dunnavant"), Blair expresses in writing a wish that Dunnavant continue to be her attorney in this case." (Document 98).

July 15, 2015: Defendant Celeste Blair (09) files this written response to the Court's Order dated July 9, 2015.

## Chronology of Relevant Events

1. <u>Defendant (09) Celeste Monet Blair Arrest</u>: Early morning on June 19, 2015, Defendant (09) Celeste Monet Blair ("Ms. Blair") was arrested in this case pursuant to a sealed indictment ("indictment") charging her with conspiracy to possess with intent to distribute 50 grams or more of a mixture and substance containing a detectible amount of methamphetamine a schedule II controlled substance, in violation of 21 U.S.C. § 846 (21 U.S.C. § 841(a)(1) and (b)(1)(B)) (Document 71).

2. <u>Initial Appearance/Arraignment/Appointment of Counsel Dunnavant</u>: Later on June 19, 2015, Blair was presented for Initial Appearance and Arraignment to

Magistrate Judge Cureton in the Magistrate Court of the Fort Worth Division of the Northern District of Texas, at which time Judge Cureton appointed Catherine Dunnavant ("Counsel") to represent Ms. Blair in this case. (Docket 44-45, 53.) Co-Defendants Angela Cupit (05) and Shawn Travis Cathey (08) were concurrently presented to Judge Cureton. The indictment, however, remained redacted as to Defendants Numbers 1, 2, 3, 4, 6, and 7. Counsel provided Ms. Blair with a copy of said redacted indictment and related statutes, and between June 19, 2015, and June 22, 2015, Counsel conveyed the seriousness of the offense charged, and the sentencing guidelines as may be applied in her case.

4. Defendant (07) Phillip Schenck arrest: On June 22, 2015, Defendant (07) Phillip Schenck was arrested in this case pursuant to the indictment.

5. Prior representation realized: Early morning on June 25, 2015, upon review of a document sent via email from AUSA Smith, and of previously disposed unrelated case files, Counsel realized that Co-Defendant (07), Phillip Schenck ("Mr. Schenck"), is the same Phillip Schenck that she had previously represented in an unrelated Driving While Intoxicated-Open Container misdemeanor criminal case, and related administrative driver's license suspension ("prior representation").

6. <u>Disclosure to government and counsel for Mr. Schenck</u>: Shortly thereafter at approximately 8:20 a.m. on June 25, 2015, Counsel sent a message to AUSA Smith disclosing said prior representation.  On June 26, 2015, counsel disclosed the same to J. Steven Bush, Mr. Schenck's appointed attorney in this case.

7. <u>Disclosure and discussion with Ms. Blair</u>: Late morning on June 25, 2015, Counsel conferred with Ms. Blair at the Parker County Jail facility regarding legal, ethical, and other issues presented by the subject prior representation, the relevant portions of which is restated as follows:

- Counsel informed Ms. Blair that Co-Defendant (07) had been arrested, thereafter whose identity consequently was made public, and whose identity was one Phillip Schenck.

- Counsel informed Ms. Blair that earlier that morning Counsel reviewed a document sent via email by AUSA Smith, wherein Counsel's realized that Co-Defendant (07) is the same Phillip Schenck whom Counsel had previously represented in a criminal misdemeanor case in Tarrant County, Texas, which representation concluded in late 2011.

- Counsel explained the concepts of attorney conflict of interest and duty of loyalty as defined by rules of professional conduct and Ms. Blair's right to effective assistance of counsel under United States Constitution's Sixth Amendment, which right is deprived where counsel is in conflict of interest between clients.

- Counsel explained to Ms. Blair that the issue presented is whether Counsel's prior representation of Mr. Schenck results in an actual or potential conflict of interest between her and Mr. Schenck, which may require substitution of counsel.

- Ms. Blair became anxious and expressed her wish that Counsel continue to represent her.

- Counsel explained to Ms. Blair the determination whether an actual conflict of interest exists is best left with the Court, accordingly Counsel would, after further research, file notice with the Court and request for judicial determination.

- Counsel explained following a determination of actual conflict of interest, clients may, under some circumstances, waive in writing such conflict of interest, further that any such waiver must be approved by the Court.

- Counsel explained once said motion is presented to the Court, the Court would then direct further proceedings, which may include further written inquiry, a hearing, or other orders.

- At the conclusion of said discussion, and in anticipation of Counsel's immediate substitution, Counsel and Ms. Blair reviewed findings made through Counsel's investigation and defense strategy to date, so that Ms. Blair's representation may be seamless.

8.   Delivery of proposed written disclosure and motion for judicial determination:

On June 29, 2015, counsel conferred with Ms. Blair at the Parker County Jail.

Counsel delivered a copy of a proposed Disclosure of Prior Representation and

Motion for Judicial Determination (the draft version of Document 86) to Ms. Blair

at the Parker County Jail.

9.   Discussion of Government's Response (Document 91): On July 7, 2015,

Counsel conferred with Ms. Blair regarding the government's response to the

Disclosure and Motion for Judicial Determination.

10.   Discussion of Court Order dated July 9, 2015 (Document 98): On July 13,

2015, Counsel conferred with Ms. Blair at the Parker County Jail. Counsel and

Ms. Blair reviewed the Court's July 9, 2015, Order (Document 98), which is

summarized and restated as follows:

> - The Court considered Ms. Blair's Disclosure of Prior
> Representation and Motion for Judicial Determination and the
> government's response thereto, and concluded that there should be
> a substitution of counsel *unless*, after full disclosure to Ms. Blair by
> Counsel, Blair expresses in writing a wish that Dunnavant continue
> to be her attorney in this case.

- In order for Ms. Blair to make a fully informed decision whether she wishes to continue to have as her attorney, the Court ordered Counsel to disclose to and discuss with Ms. Blair each of the problem areas where a problem might be viewed to exist if Counsel continued to represent Ms. Blair.

- The court ordered the discussions to occur by July 20, 2015, and that Counsel file a document signed by Counsel and Blair describing in detail the nature and extent of such disclosures and informing the Court whether Blair wishes to have Dunnavant continue as her court-appointed attorney in this case.

## Nature and Extent of Discussion Between Counsel and Ms. Blair Pursuant to Court Order Dated July 9, 2015

I, Celeste Monet Blair, defendant (09) in No. 4:15-CR-152-A, have received

a copy of the indictment, relevant statutes, including the range of punishment,

and relevant sentencing guidelines. Catherine Dunnavant ("Counsel") has

reviewed the same with me, and I understand the seriousness of my situation.

- On June 25, 2015, Counsel disclosed her prior representation of Phillip Schenck, and that such prior representation presents an issue whether counsel is in conflict of interest.

- Counsel has explained that I am guaranteed effective assistance of counsel by the Sixth Amendment and that right may be deprived where counsel is in conflict of interest.

- Counsel has provided me with copies of the Disclosure and Motion for Judicial Determination (Document 86), the Court's Order ordering the Government to Respond by no later than 4:00 p.m. July 7, 2015 (Document 87), the Government's Response (Document 91), and the Court's Order dated July 9, 2015 (Document 98).

- Counsel has discussed with me in detail the issues raised and meaning of the Government's Response to Disclosure of Prior Representation. <u>See</u> Exhibit 'A': copy of Document 91 initialed by Ms. Blair.



### Discussion of Document 91 Section I: Statement of Facts

"On June 2, 2015, AFT agents interviewed Blair. She discussed her relationship with various co-defendants, including Eric Summers (defendant number one in the instant indictment) and Phillip Schenck. For a period of time Summers, Schenck, and Blair had a drug dealing relationship that required them to meet daily. Blair and Summers have lived together for the past two years, and she is aware of his relationship to Schenck. She has observed Schenck supply Summers with methamphetamine on several occasions. On June 22, 2015, ATF agents interviewed Phillip Schenck. Schenck admitted that he sold methamphetamine to Summers. Although the full extent of the relationship between Schenck and Blair is unknown, it is clear that the defendants are acquaintances."[1]
4:15-CR-00152-A: Government's Response to Disclosure of Prior Representation, Document 91, Page 1-2 ("Document 91").

---

[1] Ms. Blair does not herein confirm or deny said alleged statements or activities, rather quotes statements made in the Government's Response.

---

## Discussion of Document 91 Section II:  Statement of Law

- Counsel has provided me with copies of the cases cited by the government in its Response, and we have discussed the government's analysis of the law as follows:

A defendant has a Sixth Amendment right to counsel, and that right includes "representation that is free from any conflict of interest." United States v. Vaquero, 997 F.2d 78, 89 (5th Cir. 1993). Document 91 at 2.

Summarized, relevant facts in *Vaquero* are:

> Eddie Stephens represented Herman Mouton at trial. The United States Attorney alerted the Court that Mr. Stephens was named by Jeffrey Hale, a key prosecution witness, as a person who had delivered cocaine to Hale on behalf of Mr. Mouton. Mr. Stephens denied this allegation. It further developed that Mr. Stephens had represented a Mr. Leonard Stewart. Mr. Stewart was also an associate of Mr. Hale and his name was linked to cocaine transactions. After a hearing, Mr. Mouton chose to go to trial with Mr. Stephens as his attorney rather than have a new attorney substituted on the eve of trial. Mr. Stephen's conflicts and his lack of preparation rendered his representation ineffective under *Strickland v. Washington,* 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed. 2d 674 (1984).
> Brief of Defendant-Appellant at 6, *United States v. Vaquero,* No. 91-3781 (5th Cir. Oct. 21, 1992).

Where an attorney has filed a notice of potential conflict, the district court should "conduct an inquiry into the matter." United States v. Rodrguiez, 278 F.3d 486, 492 (5th Cir. 2002).  Document 91 at 2.

Summarized, relevant facts in <u>Rodriguez</u> are:

> Beginning in 1996, Juan Garcia Rodriguez ("Rodriguez") was engaged in an operation smuggling undocumented aliens from Mexico to North Texas, primarily to Dallas or Garland, Texas. He would charge the aliens between $1,000 and $1,200 each per trip. Rodriguez also recruited his brother, Juan Antonio Garcia ("Garcia"), to participate in his smuggling operation.
>
> In September 1999, Garcia and Rodriguez's stepson, Juan Garcia Rodriguez ("Juan"), were apprehended at the Sarita, Texas, checkpoint while transporting nine illegal aliens in the back of a 1999 Ford conversion van. Garcia cooperated with the government and identified Rodriguez as the leader of the smuggling operation. As a result of Garcia's cooperation, the government initiated an investigation of Rodriguez and established surveillance at his residence.
>
> On January 21, 2000, Rodriguez was stopped at the United States Border Checkpoint facility south of Falfurrias, Texas, and was arrested. He was accompanied by his 16–year–old daughter and Garcia. Rodriguez was driving a 1997 Chevrolet G-van conversion, the vehicle subject to the charges contained in counts one, seven and nine on appeal before this Court. In the rear of the vehicle, concealed beneath and behind clothing and other materials, were seven undocumented aliens.
>
> Based upon the information supplied by Garcia and other corroborating information, the government obtained a search warrant for Rodriguez's house and executed it on January 21, 2000. The search revealed a number of financial documents and records that formed the basis of the subsequent money laundering charges. The search also revealed cash, multiple

vehicles and many personal luxury items. The records
obtained were used to establish Rodriguez's yearly
expenditures from 1996–2000. These were compared
to Rodriguez's recorded annual income. The records
revealed that Rodriguez earned a total of $93,103.22
between 1996 and 2000, but spent $368,787.07 for a
documented differential of $275,683.85.

United States v. Rodrguiez, 278 F.3d. 486, 488 (5th Cir.
2002).

This inquiry is required in order to ensure "that criminal trials are
conducted within the ethical standards of the profession and that
legal proceedings appear fair to all who observe them." *Wheat v.
United States*, 486 U.S. 153, 160 (1998). "A defendant may choose to
waive his/her Sixth Amendment protections, but that right is not
absolute." *Id.* Document 91 at 2.

Summarized, relevant facts in <u>Wheat</u> are:

> Petitioner Mark Wheat, along with numerous
> codefendants, was charged with participating in a far-
> flung drug distribution conspiracy. Over a period of
> several years, many thousands of pounds of
> marijuana were transported from Mexico and other
> locations to southern California. Petitioner acted
> primarily as an intermediary in the distribution ring;
> he received and stored large shipments of marijuana
> at his home, then distributed the marijuana to
> customers in the region.
> Also charged in the conspiracy were Juvenal Gomez–
> Barajas and Javier Bravo, who were represented in
> their criminal proceedings by attorney Eugene
> Iredale. Gomez–Barajas was tried first and was
> acquitted on drug charges overlapping with those
> against petitioner. To avoid a second trial on other
> charges, however, Gomez–Barajas offered to plead

guilty to tax evasion and illegal importation of merchandise. At the commencement of petitioner's trial, the District Court had not accepted the plea; Gomez-Barajas was thus free to withdraw his guilty plea and proceed to trial.

Bravo, evidently a lesser player in the conspiracy, decided to forgo trial and plead guilty to one count of transporting approximately 2,400 pounds of marijuana from Los Angeles to a residence controlled by Victor Vidal. At the conclusion of Bravo's guilty plea proceedings on August 22, 1985, Iredale notified the District Court that he had been contacted by petitioner and had been asked to try petitioner's case as well. In response, the Government registered substantial concern about the possibility of conflict in the representation. After entertaining some initial discussion of the substitution of counsel, the District Court instructed the parties to present more detailed arguments the following Monday, just one day before the scheduled start of petitioner's trial.

At the Monday hearing, the Government objected to petitioner's proposed substitution on the ground that Iredale's representation of Gomez–Barajas and Bravo created a serious conflict of interest. The Government's position was premised on two possible conflicts. First, the District Court had not yet accepted the plea and sentencing arrangement negotiated between Gomez–Barajas and the Government; in the event that arrangement were rejected by the court, Gomez–Barajas would be free to withdraw the plea and stand trial. He would then be faced with the prospect of representation by Iredale, who in the meantime would have acted as petitioner's attorney. Petitioner, through his participation in the drug distribution scheme, was familiar with the sources and size of Gomez–Barajas' income, and was

thus likely to be called as a witness for the
Government at any subsequent trial of Gomez–
Barajas. This scenario would pose a conflict of interest
for Iredale, who would be prevented from cross-
examining petitioner and thereby from effectively
representing Gomez–Barajas.

<u>Wheat v. United States</u>, 486 U.S. 153, 154-56 (1998).

Even where a defendant has provided a waiver of any conflict of
interest, the court may disqualify counsel based on actual conflict
or serious potential for conflict. *United States v. Vasquez*, 995 F.2d
40, 42 (5th Cir. 1993). Document 91 at 2.

Summarized, relevant facts in <u>Vasquez</u> are:

Manuel Vasquez was found guilty by a jury of
conspiracy to possess with intent to distribute more
than five kilograms of cocaine and conspiracy to
import more than five kilograms of cocaine. Vasquez
was sentenced to concurrent imprisonment terms of
300 months on each count to be followed by
concurrent terms of five years supervised release.

Prior to trial, the Government filed a motion for a
conflict-of-interest hearing. During the hearing, the
Government requested that defense counsel, Robert
Ramos, be disqualified from representing Vasquez
because counsel was also representing a potential
witness in the case, George Lore. The district court
granted the motion to disqualify Ramos from
representing Vasquez.

Vasquez argues on appeal that the district court
abused its discretion in disqualifying Ramos because
it relied on the unsubstantiated and contradicted
representations of the Government. Vasquez also
argues that a defendant can validly waive his right to
be free from a conflict of interest.

United States v. Vasquez, 995 F.2d 40, 41 (5th Cir. 1993).

"The Supreme Court has held that where an actual conflict of interest exists or where the potential for conflict exists, "the district court must be allowed substantial latitude in refusing waivers of conflicts of interest." Although, [i]n most cases, it is the defense attorney in a criminal matter who is in the best position, professionally and ethically, to determine when a conflict exists or will probably develop in the course of trial. *United States v. Rodriguez*, 278 at 492." Document 91 at 2.

Relevant facts in Rodriguez are summarized above.

An actual "conflict of interest exists when defense counsel places himself in a position conducive to divided loyalties." United States v. Carpenter, 769 F.2d 258, 263 (5th Cir. 1985). Document 91 at 3.

Summarized, relevant facts in Carpenter are:

> Carpenter also contends that the district court failed to properly admonish him as to the possible conflict of interest created by his defense counsel's prior involvement in the case while employed as an assistant district attorney and by the payment of his defense counsel by the individual, Barry Hogan, convicted of the offense about which the government alleges the defendant committed perjury. Carpenter contends that he did not knowingly waive his right to conflict-free counsel. He argues that any waiver by him was not knowing and voluntary because the district court failed to properly admonish him about the conflict-of-interest issue. He asserts that "there is an affirmative duty upon the Court to advise a defendant of the nature of conflicts of interest." Carpenter relies on two cases for this argument: *United States v. Garcia*, 517 F.2d 272 (5th

Cir.1975) and *United States v. Alvarez*, 580 F.2d 1251 (5th Cir.1978). In *Garcia*, this Court held that in a criminal case, the district court should actively participate in a decision to waive a conflict of interest by defense counsel. *Id.* at 277.
<u>United States v. Carpenter</u>, 769 F.2d 258, 262 (5th Cir. 1985).

When determining whether or not an actual conflict of interest exists, the Fifth Circuit looks at:

(1) whether the attorney has confidential information that is helpful to one client but harmful to the other client;
(2) whether and how closely related is the subject matter of the multiple representations;
(3) how close in time the multiple representations are; and
(4) whether the prior representation has been unambiguously terminated.
*United States v. Burns*, 526 F.3d 852, 856 (5th Cir. 2008). Document 91 at 3.

Summarized, relevant facts in <u>Burns</u> are:

Appellant's conflict of interest challenge stems from the discovery, during the Government's case in chief, that Appellant's attorney, Michael Heiskell, had represented one of the Government's witnesses in a prior asset forfeiture proceeding (7 R. 272,275- 282). Specifically, after the Government had called several witnesses to testify, it called Fritz Earl Hicks as its next witness (7 R. 272). After Hicks' was sworn in, a bench conference was requested by the prosecutor, at which time he advised the Court that a deputy marshal had relayed information indicating that Attorney Heiskell had previously represented Hicks in a separate proceeding (7 R. 272). In response to this

revelation, Attorney Heiskell asked how long ago the
supposed representation had taken place (7 R. 272).
At that time, the district court dismissed the jury and
proceeded to hear evidence from Hicks and regarding
the nature of the prior representation (7 R. 274-279).
*32 Hicks testified that he recognized Attorney
Heiskell and that he had "handled a case" for Hicks
in Weatherford, Texas (7 R. 275). To Hicks'
recollection, the representation was in the year 2002,
and it related to some money that had been
confiscated from him (7 R. 275-276).
Brief for Plaintiff-Appellee at 31, <u>United States v.
Burns</u>, No. 07-5032 (5th Cir. Nov. 27, 2007).

If it is found that an actual conflict indeed exists, and the defendant
chooses to retain the conflicted attorney, the district court must
conduct a *Garcia* hearing. *United States v. Garcia-Jasso*, 472 F.3d 239,
243 (5th Cir. 2006). The purpose of the hearing is to "ensure a valid
waiver by the defendant of his Sixth Amendment right." *Id.* The
purpose of the hearing is to "ensure that the defendant (1) is aware
that a conflict of interest exists; (2) realizes the potential hazards to
his defense by continuing with such counsel under the onus of a
conflict; and (3) is aware of his right to obtain other counsel." *Id.*
(quoting *United States v. Greig*, 967 F.2d 1018 (5th Cir. 1992)).
Document 91 at 3.

Summarized, relevant facts in <u>Garcia-Jasso</u> are:

In June 2003, Garcia–Jasso left Texas for Michigan. On
July 11, 2003, the United States District Court for the
Southern District of Texas, Brownsville Division,
issued an arrest warrant for Garcia–Jasso. Almost a
year later, on June 4, 2004, Garcia–Jasso was taken
into custody in the Western District of Michigan
pursuant to the warrant issued on July 11, 2003. He
was transferred to Texas on June 14, 2004.

Represented by counsel Robert "Eddy" De la Garza, Garcia–Jasso pleaded guilty on August 25, 2004. On February 28, 2005, the district court sentenced Garcia–Jasso to two concurrent 135–month terms of imprisonment, to be followed by concurrent five-year terms of supervised release. During the sentencing hearing, De la Garza objected to, among other things, a proposed two-level obstruction of justice enhancement under U.S.S.G. § 3C1.1. The Presentence Investigation Report ("PSR") included a recommendation for an obstruction of justice enhancement because Garcia–Jasso failed to meet with DEA agents, because he knew that an arrest warrant had been issued against him, and because he knew that he was wanted for questioning.

In reviewing the objection to the obstruction of justice enhancement, the district court noted the possible need for De la Garza to testify regarding whether a DEA agent told him about the existence of an arrest warrant, and if so, whether De la Garza in turn informed Garcia–Jasso about the issuance of the arrest warrant. After some discussion, De la Garza stated that he would prefer to proceed as Garcia–Jasso's attorney and did not testify. At the sentencing hearing, the DEA agent testified that he informed De la Garza about the existence of an arrest warrant for Garcia–Jasso in August 2003 (approximately two months after Garcia–Jasso had left Texas for Michigan). The district court overruled Garcia–Jasso's objection to the obstruction of justice enhancement.

During the sentencing hearing, the DEA agent also testified that De la Garza had informed him on March 3, 2003, that he was representing both Garcia–Jasso and Linda Vasquez, Garcia–Jasso's common-law wife. Garcia–Jasso mistakenly alleges that the DEA agent testified that De la Garza claimed to represent both

> Garcia–Jasso and Vasquez after the warrant had been issued. The record only includes testimony that De la Garza made this representation on March 3, 2003, approximately four months before an arrest warrant was issued for Garcia–Jasso.
> United States v. Garcia-Jasso, 472 F.3d 239, 242 (5th Cir. 2006)."

When determining whether a potential conflict of interest exists, "[t]he evaluation of the facts and circumstances of each case under this standard must be left primarily to the informed judgment of the trial court." *Wheat*, 486 U.S. at 164.  "The determination requires a fact-intensive inquiry." *Id.*  "The decision must be made "not with the wisdom of hindsight after the trial has taken place, but in the murkier pre-trial context when relationships between parties are seen through a glass, darkly." *Id*. at 162.  Document 91 at 3-4.

Relevant facts in Wheat are summarized above.

The district court should "balance proper considerations of judicial administration against the right to counsel."  *United States v. Voigt*, 89 F.3d 1050, 1074 (3d Cir. 1996).  There is potential for a conflict of interest "whenever an attorney's loyalties are divided, and an attorney who cross-examines former clients inherently encounters divided loyalties." *Voigt*, 89 at 1050 (internal citations omitted). Document 91 at 4.

Summarized, relevant facts in Voigt are:

> By letter dated August 6, 1993, the government requested that the district court review the propriety of permitting James J. Binns, Esq. to serve as counsel for defendant Voigt, as Voigt wished. In particular, the government requested that the court hold a hearing "to determine whether Mr. Binns should be disqualified (i) because of the existence of actual

and/or potential conflicts of interest of Mr. Binns arising out of his prior representation of one or more defendants other than Mr. Voigt and his prior representation of the purported corporate entities in whose name the defendants acted; and (ii) because Mr. Binns may himself be a witness in this action."App. 45. Specifically, the government argued that Binns may have served as counsel for the Anderskow, Anchors and Travis. The government based this contention on Binns' November 12, 1992 letter in which he stated that he was representing the Trust, Anderskow, Voigt, and Jack Dunn "for the limited purpose of responding to outstanding subpoenas." The government also relied on interviews held with defendants Anderskow and Anchors in which they made reference to Binns' representation of EAMFT. With respect to the alleged prior representation of Ms. Travis, the government referred to memoranda and handwritten notes authored by defendant Travis in which there were references to "Jimmy" or "Binns". App. 46-47. Additionally, the government expressed concern that Mr. Binns might be called as a witness with respect to a proposed transaction involving Binnas' attorney escrow account. App. 47.
Brief for Appellant-Defendant at 22-23, <u>United States v. Voigt</u>, No. 95-5092, (3d Cir. Jul. 9, 1996).

In *United States v. Bradford*, the defendant was charged with conspiracy to possess with intent to district in excess of 500 grams of cocaine. *United States v. Bradford*, 121 F. Supp. 2d 454 [] (W.D. Pa. 2000). His attorney also represented a cooperating witness, on a statutory rape case, who was expected to testify at the defendant's drug trial. *Id.* at 455. Counsel offered to withdraw from representing the cooperating witness, but the court still concluded that there was a potential conflict of interest. *Id.* The court,

---

irrespective of counsel's lack of knowledge concerning cooperating witnesses testimony, was concerned about counsel's ability to effectively cross-examine the witness and attach his credibility. *Id.* at 456.    There was concern that counsel "may be unwilling or unable to vigorously cross-examine [the cooperating witness] . . ." *Id.*    The government's motion to disqualify counsel was granted. *United States v. Bradford*, 121 F. Supp. 2d 454, 457 (W.D. Pa. 2000). (Document 91 at 4).

Summarized, relevant facts in <u>Bradford</u> are:

> The defendant was indicted on March 14, 2000, in a one-count indictment charging conspiracy to possess with the intent to distribute in excess of 500 grams of cocaine. 21 U.S.C. § 846. The defendant was originally represented by Jeffrey R. Wasak, Esquire, and pled not guilty on June 7, 2000. During September 2000, Hudak agreed to represent the defendant and filed his formal entry of appearance on September 26, 2000. Hudak also represents Jamal Arnold on a statutory rape case in the Erie County Court of Common Pleas. Arnold and the defendant are both housed at the Erie County Prison. On September 25, 2000, an FBI agent interviewed Arnold regarding conversations he had with the defendant detailing the conspiracy. Arnold, as a cooperating government witness, is prepared to testify against the defendant at trial. The Government thus moved for disqualification of Hudak.
> <u>United States v. Bradford</u>, 121 F. Supp. 2d 454, 455 (W.D. Pa. 2000)."

## Discussion of Document 91 Section III.  Analysis

- Counsel has explained that the government's response raises issue that a serious conflict of interest exists arising from Counsel's previous representation of Schenck in an unrelated Tarrant County criminal case:

- in the pre-trial context trial strategy is not yet clear;

- if Counsel continues to represent Ms. Blair it is possible that the proceedings will not see fair to outside observers;

- there is a potential conflict of interest where an attorney has to cross-examine a former client;

- if this case goes to trial, it is possible that defense counsel will have to cross-examine Schenck and may not be able to vigorously cross-examine him due to the prior representation.  Although it is not clear who will testify in this case, it is clear from ATF interviews that Schenck and Blair could be used to testify against each other at trial; and

- it is also possible that the two defendants could be an adversarial position at the sentencing phase.

## Discussion of Document 91 Section IV:  Conclusion

The government concluded that the Court may find defense counsel should be disqualified because there is a potential for a conflict of interest.

---

No. 4:15-CR-00152-A(09):  United States v. Celeste Monte Blair
Defendant (09) Celeste Blair's Written Response to the Court's Order Dated July 9, 2015
(Document 98)
Page 21 of 39

## Disclosure and Discussion of Issues Presented

The government suggests Counsel may be disqualified based on actual or the serious potential of conflict of interest. Document 91, Page 4.

1. <u>Sixth Amendment Right to Counsel</u>:

The relevant issue in <u>United States v. Vaquero</u>, 997 F.2d 78 (5th Cir. 1993), was whether Defendant Mouton's attorney Edward Stephens' joint representation of an alleged co-conspirator, and where he himself may have been implicated as also being involved in the conspiracy, may have been reluctant at trial to ask questions of witnesses that could implicate his client Stewart or himself. <u>Id</u>.

Although the facts in <u>Vaquero</u> are distinguished from the facts in this case because in Vaquero, the multiple representation was concurrent representation of the defendant and an alleged co-conspirator, and worse, the attorney was himself implicated in the subject conspiracy, whereas here, Counsel represented Co-Defendant (07) Schenck in an unrelated criminal case, such representation of which terminated  prior to the commencement of the instant alleged conspiracy.

The rule in *Vaquero*, however, applies to all criminal defendants: "In all criminal prosecutions, the accused shall enjoy the right to ... to have assistance of counsel for his defense." U.S. Const. Amend. VI.

_____ **Ms. Bair understands that she has a Sixth Amendment right to counsel.**

2. <u>Conflict of Interest</u>:

"Under the Sixth Amendment, where there exists a constitutional right to counsel, there exists a correlative right to representation that is free from any conflict of interest.  A conflict exists when defense counsel places himself in a position conducive to divided loyalties." <u>United States v. Carpenter</u>, 769 F.2d 258, 263 (5th Cir. 1985) (internal citations omitted)(no conflict found where defense counsel formerly assistant district attorney).

_____ **The Sixth Amendment right to counsel includes representation that is free from any conflict of interest.**

"In order to establish a violation of the Sixth Amendment a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected is lawyer's performance." <u>Cuyler v. Sullivan</u>, 100 S.Ct. 1708, 1718 (1980).

_(CD)_ Ms. Blair understands Counsel's prior representation of Co-Defendant Phillip Schenck presents an issue whether such prior representation causes Counsel to be in a position conducive to divided loyalties.

"Multiple representation does not violate the Sixth Amendment unless it gives rise to conflict of interest." Cuyler v. Sullivan, 100 S.Ct. 1708, 1719 (1980). "Since a possible conflict inheres in **almost** every instance of multiple representation, a defendant who objects to multiple representation must have the opportunity to show that potential conflicts impermissibly imperil his right to a fair trial." Id. (emphasis added).

_(CB)_ Ms. Blair may object to Counsel's continued representation of her based on the prior representation of Mr. Schenck.

A. Actual Conflict of Interest.

In United States v. Burns, 526 F.3d 852 (5th Cir. 2008), a court deputy marshal advised the district court that the Defendant Burns' attorney, Michael Heiskell, had previously represented a government witness in the current trial, in a previous asset forfeiture proceeding. The Burns court addressed the question whether a disqualifying conflict exists as highly fact-dependent, finding

four factors particularly relevant: (1) whether the attorney has confidential information that is helpful to one client but harmful to the other client; (2) whether and how closely related is the subject matter of the multiple representations; (3) how close in time the multiple representations are; and (4) whether the prior representation has been unambiguously terminated. Id. Furthermore, the defendant must show more than that his attorney cross-examined a former client before a hypothetical conflict will be considered an actual one. Id. (citing <u>Perillo v. Johnson</u>, 205 F.3d 775, 801-02 (5th Cir. 2000). The Burns court found the conflict purely hypothetical where Burns attorney represented a government witness in an asset forfeiture administrative proceeding four years prior to the instant trial; the representation had been unequivocally terminated; the facts and issues of the previous representation had not relation to the charges brought against Burns; the attorney had very limited contact with the former client and in those contacts did not discuss the source of the forfeited funds. <u>Id</u>. at 856.

In its response, the government applies the factors enunciated in <u>Burns</u> and concluded that no actual conflict of interest exists in this case because Counsel did not learn any confidential information during the prior

representation of Schenck that could be harmful to Ms. Blair in this case; the

subject matter of the two representations are different; and the representation of

Schenck began and ended before the alleged commencement of this case.



Ms. Blair understands the test to determine whether an

actual conflict of interest exists is:

(1) whether the attorney has confidential information that

is helpful to one client but harmful to the other client;

(2) whether and how closely related is the subject matter of

the multiple representations,

(3) how close in time the multiple representations are; and

(4) whether the prior representation has been

unambiguously terminated.

B. Waiver of Actual Conflict of Interest.

In United States v. Garcia-Jasso, 472 F.3d 239, 243 (5th Cir. 2006), Garcia-

Jasso claimed his attorney, De la Garza, acted under two conflicts of interest: "(1)

De La Garza had at one point represented both Garcia-Jasso and Garcia-Jasso's

wife, Vasquez, and (2) De la Garza was potentially criminally liable for his role in

Garcia-Jasso's obstruction of justice." Id. at 244.  Garcia-Jasso argued the district

---

court should have recognized the existence of a conflict when the DEA agent testified during the sentencing hearing that De la Garza had previously stated he was representing both husband and wife, and that it appeared that De la Garza had traded Garcia-Jasso for his other client, the wife, because she had not been indicted. Id. The court found insufficient evidence to support Garcia-Jasso's allegation because at the time of the joint representation, the government had not filed a complaint against Garcia-Jasso, the couple were still married, therefore any multiple representation was likely to advance the couple's common interest as co-habitants of a home under investigation, and the record did not indicate that De la Garza had represented the wife in any criminal proceeding. Id. The court restated its previous findings that "[j]oint representation does not necessarily create a conflict of interest," ... "A conflict will exist only "when defense counsel is compelled to compromise his or her duty of loyalty or zealous advocacy to the accused by choosing between or blending the divergent or competing interests of a former client[]" ... "A defendant must show more than a speculative or potential conflict[]" ...   A defendant must show more than a speculative or potential conflict[]" ... "It must be demonstrated that the attorney made a choice between possible alternative courses of action ... if he did not

make such a choice, the conflict remained hypothetical. Id. (internal citations omitted).

Garcia-Jasso also received a two level obstruction of justice guideline increase because he failed to meet with DEA agents because he knew an arrest warrant had been issued against him. At issue was whether De la Garza played a role in Garcia-Jasso's absence from the jurisdiction and therefore advancing his own interests to the detriment of Garcia-Jasso's interests. A chronicle of events revealed that Garcia-Jasso fled the jurisdiction in June 2003, the arrest warrant issued in July 2003, and Attorney De la Garza first learned of the warrant in August 2003. Id. at 245. Accordingly, the court opined there was no reason to conclude an actual conflict of interest existed. Id.

Garcia-Jasso argued the district court should have conducted a Garcia hearing once it became aware of facts demonstrating said conflicts. Id. Because there was insufficient evidence demonstrating that an actual conflict of interest existed as to either multiple representation or De La Garza's self-interest, the district court did not err in failing to conduct a Garcia hearing. Id.

Rule: Where, however, there exists a conflict of interest and the defendant waives such conflict, thereby waiving his or her Sixth Amendment right to

counsel free of conflict, the court must conduct a Garcia hearing to ensure the defendant is aware that a conflict of interest exists; (2) realizes the potential hazards to his defense by continuing with such counsel under the onus of a conflict; and (3) is aware of his right to obtain other counsel.  Id. (internal citations omitted).

 _____ If Counsel is under the onus of actual conflict of interest in this case, Ms. Blair's Sixth Amendment right to counsel is violated if counsel continues the representation.

_____ If Counsel is under onus of conflict of interest, and Ms. Blair wishes Counsel to continue to represent her in this matter, she has a right to waive her Sixth Amendment right to be represented in this case by counsel free of such actual conflict of interest.

_____ If Counsel is under onus of conflict of interest, and if Ms. Blair files a waiver of actual conflict of interest with the Court, the Court must conduct a <u>Garcia</u> hearing to ensure Ms. Blair is aware:

_____ (1) that a conflict of interest exists

 (2) realizes the potential hazards to her defense by continuing with such counsel under the onus of conflict; and

 (3) is aware of her right to obtain other counsel.

A _Garcia_ hearing is required to ensure "that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." _Wheat v. United States_, 486 U.S. 153, 160 (1998). A defendant may choose to waive his/her Sixth Amendment protections, but that right is not absolute". _Id._ (attorney represented two co-defendants in a conspiracy, but was disqualified from representation of a third defendant in same conspiracy when the court rejected the third defendant's waiver of conflict).

Ms. Blair understands the government is concerned that the legal proceedings in this case may not appear fair or conducted within the ethical standards of the profession to all those who observe them should Counsel continue her representation in this case.

If Counsel is under onus of actual conflict and Ms. Blair wishes to waive her right to conflict free representation, Ms. Blair understands that her right to waive actual conflict of interest may be rejected by the Court.

C. <u>Potential Conflict of Interest</u>.

In its discussion of potential conflict of interest, the government relies on a holding in another circuit:

> There is potential for a conflict of interest "whenever an attorney's loyalties are divided, and an attorney who cross-examines former clients inherently encounters divided loyalties." *United States v. Voigt*, 89 F.3d 1050, 1074 (3d Cir. 1996). Document 91, Page 4.

The <u>Voigt</u> holding enunciates appears to enunciate a dispositive per se rule that an "attorney who cross-examines former clients inherently encounters divided loyalties." Document 91, Page 4. The rule enunciated in <u>Cuyler</u> however, does not indicate such a per se rule: "*Holloway* reaffirmed that multiple representation does not violate the Sixth Amendment unless it gives rise to a conflict of interest. Since a possible conflict of interest inheres in **almost** every instance of multiple representation, a defendant who objects to multiple representation must have the opportunity to show that potential conflicts impermissible imperil his right to a fair trial. <u>Cuyler v. Sullivan</u>, 100 S.Ct. 1708, 1718 (1980) (citations omitted) (emphasis added).

> The District Court must recognize a presumption in favor of petitioner's counsel of choice, but that presumption may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict. The evaluation of the

facts and circumstances of each case under this standard must be left primarily to the informed judgment of the trial court. Wheat v. United States, 486 U.S. 153, 164 (1998).

The government summarizes the facts in a W.D. Penn. case to illustrate the existence of a potential conflict of interest supporting a government motion to disqualify counsel "[Defendant Bradford's] attorney also represented a cooperating government witness, on a statutory rape case, who was expected to testify at the defendant's drug trial." Document 91 at 4 (citing United States v. Bradford, 121 F. Supp. 2d 454, 455 (W.D. Pa. 2000)). "The court, irrespective of counsel's lack of knowledge concerning the cooperating witness's testimony, was concerned about counsel's ability to effectively cross-examine the witness and attack his credibility." United States v. Bradford, 121 F. Supp. 2d 454, 455 (W.D. Pa. 2000). The court was concerned that counsel "may be unwilling or unable to vigorously cross-examine [the cooperating witness]." Id. "The government's motion to disqualify counsel was granted." Id.

From the summarized facts recited by the Government, it appears the facts in Bradford are similar to the facts in this case where Mr. Schenck, a former client of Counsel in an unrelated case, may be called to testify against Blair,

therefore raising a concern is whether Counsel would be unwilling or unable to vigorously cross-examine Mr. Schenck, accordingly should be disqualified.

In <u>Bradford</u>, Attorney Hudak represented Defendant Arnold a federal drug case and the Defendant Bradford in an unrelated statutory rape case, and Arnold was a cooperating witness against Bradford in the drug case.  <u>See United States v. Bradford</u>, 121 F. Supp. 2d 454 (W.D. Pa. 2000).  The conflict, however, arose because Arnold and Bradford were housed at the same facility pending disposition of their respective cases.  The FBI interviewed Arnold about conversations he had with Bradford wherein Bradford detailed his culpability in the federal drug case Bradford was charged with.  Arnold, as a cooperating witness for the government, was prepared to testify against Bradford, accordingly the government moved to disqualify Hudak.  Id. at 454-55.

**Ms. Blair understands that even if there does not exist an actual conflict of interest, there is a potential for conflict of interest where Counsel's prior representation of Schenck causes Counsel to be unwilling or unable to vigorously cross-examine Mr. Schenck.**

Although the Government's response is not by title a motion to disqualify counsel, and Ms. Blair has not previously waived actual conflict of interest, the

government opines "[e]ven if Blair does sign such a waiver, the administration of justice may outweigh the defendant's right to her chosen counsel due to the potential conflict of interest." Document 91 Page 6.   The Government expresses concern "if defense counsel continues to represent Blair, it is possible that the proceedings will not seem fair to outside observers." Document 91 at 5.   See also 4:14-CR-0078: Documents 98, 254, and 1124.

_CB_____   **Ms. Blair understands the Government has not filed a motion to disqualify counsel to date.**

_CB_____   **Ms. Blair understands the potential for conflict of interest exists where she and Co-Defendant Schenck are adverse to one another by virtue of their being named in the same indictment and as alleged co-conspirators where one either or both may testify against the other.   Ms. Blair understands that the Government is concerned that a serious potential for conflict exists should Counsel continue to represent Ms. Blair:**

    **- in the pre-trial context trial strategy is not yet clear;**

    **- if Counsel continues to represent Ms. Blair it is possible that the proceedings will not see fair to outside observers;**

    **- there is a potential conflict of interest where an attorney has to cross-examine a former client;**

- if this case goes to trial, it is possible that defense counsel will have to cross-examine Schenck and may not be able to vigorously cross-examine him due to the prior representation. Although it is not clear who will testify in this case, it is clear from ATF interviews that Schenck and Blair could be used to testify against each other at trial; and

- it is also possible that the two defendants could be an adversarial position at the sentencing phase.

Ms. Blair understands the seriousness of this case, and the extreme importance that Counsel's loyalties are undivided, further that her defense in this case may include impeachment or other legal attack of Co-Defendant (07) Phillip Schenck, and crucial to such impeachment or other legal attack is Counsel's ability to cross-examine or otherwise legally attack Phillip Schenck without onus of divided loyalty or other self-interest.

Ms. Blair understands the Court's duty to ensure the proceedings appear fair to outside observers.

I, **Celeste Monet Blair**, have reviewed the foregoing document and discussed the concerns raised in the Government's Response (Document 91) to Disclosure and Motion for Judicial Determination (Document 86) with Counsel Dunnavant, and understand the Government's concerns that there exists a potential conflict of interest where Counsel Dunnavant continues to represent me in this case.  I have placed my initials in various areas to confirm the same.  My position is:

The correct spelling of my BIRTH name is Celeste Monette Blair.  I recently divorced Dennis Askins and by law, still carry his Sur Name "Askins"

I have Celeste Blair have read the 36 pg. and the disclosure of prior representation (doc. 91) and related cases cited by the government.  I am aware of the potential problems raised by the government.  I understand I have a 6th Amendment right to counsel which is conflict free counsel.  My understanding of those problem areas is (Scheneks Blair) multiple representation representation which raises a question whether the lawyer (Dunnavant)

No. 4:15-CR-00152-A(09): United States v. Celeste Monte Blair
Defendant (09) Celeste Blair's Written Response to the Court's Order Dated July 9, 2015
(Document 98)
Page 36 of 39

36 A.

The court would have a garcia hearing after which I may or may not accept my waiver.

If there is No actual conflict of interest there may be a potential for conflict of interest. When the court has been notified of multiple representation the court must conduct an inquiry.

The court ordered CATHERINE DUNNAVENT and me to discuss the concerns raised by the government after full disclosure of the multiple representation (Schenck DWI 2011 and after those discussions inform the court whether I wish to have Dunnevant to continue as my court appointed attorney in this case. In fact this has been an ongoing discussion since June 25, 2015.

36.B.

Cont'd from 36a.

My wish is to have Catherine
Dunnevant continue to be my counsel.

Celeste Monet Blair, Defendant (09)
Date: July 14, 2015

I, **Catherine Dunnavant**, SBOT, appointed counsel for Celeste Monet Blair (09), verify that I have thoroughly reviewed the Government's Response (Document 98) to Ms. Blair's Disclosure and Motion for Judicial Determination (Document 86), the foregoing Response to Court's Order dated July 9, 2015, and relevant law and facts with Ms. Blair, and believe she is fully informed of the law as it applies to the facts, and the issues raised, and makes herewith an informed decision whether to have Counsel Dunnavant continue to represent her in this matter. I further assert that I conferred with Ms. Blair regarding the same on July 14, 2015, after which I left all relevant documents with Ms. Blair for her thoughtful consideration. I returned on July ____14____, 2015, to re-review the (corrected) document, address any concern(s) expressed by Ms. Blair, and accept Ms.Blair's written statement to the Court, which is contained herein.

Catherine Dunnavant, SBOT 24038871

Date ____14____, 2015.

---

## Prayer

**Wherefore**, premises considered, Defendant Celeste Monte Blair hereby files her written response to the Court's Order dated July 9, 2015, and prays the Court grant such relief as may be warranted.

Respectfully submitted,

Catherine Dunnavant
SBOT 24038871
P. O. Box 171464
Arlington, Texas 76003
(817) 938-8782 – office
1 (888) 222-0062 – facsimile

Attorney for Celeste Monte Blair

## Certificate of Service

I hereby certify that on this the __15__ day of July, 2015, I served a copy of the foregoing motion to AUSA Shawn Smith via email and delivery to the U.S. Attorney' box located at the District Clerk's office in the Federal Courthouse located in Fort Worth, Texas, and to Attorney Steven J. Bush, via email.

Catherine Dunnavant

---

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| V. | § | No. 4:15-CR-00152-A |
| | § | |
| CELESTE MONET BLAIR (09) | § | |

**EXHIBIT 'A'**

**DOCUMENT 91**
**GOVERNMENT'S RESPONSE TO DISCLOSURE OF PRIOR REPRESENTATION**

NORTHERN DISTRICT OF TEXAS
FILED

JUL - 6 2015

CLERK, _____ COURT
By_____ Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

UNITED STATES OF AMERICA

v.                                          CRIMINAL NO.  4:15-CR-152-A

CELESTE MONTE BLAIR  (09)

GOVERNMENT'S RESPONSE TO DISCLOSURE
OF PRIOR REPRESENTATION

The United States Attorney for the Northern District of Texas submits this, its

response to the Defendant's Disclosure of Prior Representation, and would respectfully

show the Court the following:

**I.      Statement of Facts**

The defendant, Celeste Monte Blair, has been indicted in a federal drug conspiracy

case.  She is represented by Catherine Dunnavant ("defense counsel").  Defense counsel

disclosed to the Court on June 30, 2015, that she represented co-defendant Phillip

Schenck (defendant number seven in the instant indictment) on an unrelated Driving

While Intoxicated- Open Container charge in 2011.  Defense counsel has asked the Court

to determine whether or not she should be disqualified.

On June 2, 2015, ATF agents interviewed Blair.  She discussed her relationship

with various co-defendants, including Eric Summers (defendant number one in the instant

indictment) and Phillip Schenck.  For a period of time Summers, Schenck, and Blair had

a drug dealing relationship that required them to meet daily.  Blair and Summers have

lived together for the past two years, and she is aware of his relationship to Schenck.  She



**Government's Response to Disclosure of Prior Representation – Page 1**

has observed Schenck supply Summers with methamphetamine on several occasions.  On 
June 22, 2015, ATF agents interviewed Phillip Schenck.  Schneck admitted that he sold
methamphetamine to Summers.  Although the full extent of the relationship between
Schenck and Blair is unknown, it is clear that the defendants are acquaintances.

## II.    Statement of Law

A defendant has a Sixth Amendment right to counsel, and that right includes
"representation that is free from any conflict of interest." *United States v. Vaquero,* 997
F.2d 78, 89 (5th Cir.1993).  Where an attorney has filed a notice of potential conflict, the
district court should "conduct an inquiry into the matter." *United States v. Rodriguez,*
278 F.3d 486, 492 (5th Cir. 2002).  This inquiry is required in order to ensure "that
criminal trials are conducted within the ethical standards of the profession and that legal
proceedings appear fair to all who observe them." *Wheat v. United States,* 486 U.S. 153,
160 (1988).  A defendant may choose to waive his/ her Sixth Amendment protections, but
that right is not absolute. *Id.*  Even where the defendant has provided a waiver of any
conflict of interest, the court may disqualify counsel based on actual conflict or serious
potential for conflict. *United States v. Vasquez,* 995 F.2d 40, 42 (5th Cir. 1993).  The
Supreme Court has held that where an actual conflict of interest exists or where the
potential for conflict exists, "the district court must be allowed substantial latitude in
refusing waivers of conflicts of interest."  Although, "[i]n most cases, it is the defense
attorney in a criminal matter who is in the best position, professionally and ethically, to
determine when a conflict exists or will probably develop in the course of the trial."
*Rodriguez,* 278 at 492.

Government's Response to Disclosure of Prior Representation – Page 2

An actual "conflict exists when defense counsel places himself in a position conducive to divided loyalties." *United States v. Carpenter*, 769 F.2d 258, 263 (5th Cir.1985). When determining whether or not an actual conflict of interest exists, the Fifth Circuit looks at:

> (1) whether the attorney has confidential information that is helpful to one client but harmful to the other client;
> (2) whether and how closely related is the subject matter of the multiple representations;
> (3) how close in time the multiple representations are; and
> (4) whether the prior representation has been unambiguously terminated.

*United States v. Burns*, 526 F.3d 852, 856 (5th Cir. 2008). If it is found that an actual conflict indeed exists, and the defendant choses to retain the conflicted attorney, the district court must conduct a *Garcia* hearing. *United States v. Garcia-Jasso*, 472 F.3d 239, 243 (5th Cir. 2006). The purpose of the hearing is to "ensure a valid waiver by the defendant of his Sixth Amendment right." *Id.* The purpose of the hearing is to "'ensure that the defendant (1) is aware that a conflict of interest exists; (2) realizes the potential hazards to his defense by continuing with such counsel under the onus of a conflict; and (3) is aware of his right to obtain other counsel." *Id.* (quoting *United States v. Greig*, 967 F.2d 1018, 1022 (5th Cir. 1992)).

When determining whether a potential conflict of interest exits, "[t]he evaluation of the facts and circumstances of each case under this standard must be left primarily to the informed judgment of the trial court." *Wheat*, 486 U.S. at 164. The determination requires a fact-intensive inquiry. *Id.* The decision must be made "not with the wisdom of hindsight after the trial has taken place, but in the murkier pre-trial context when

relationships between parties are seen through a glass, darkly." *Id.* at 162. The district

court should "balance proper considerations of judicial administration against the right to

counsel." *United States v. Voigt*, 89 F.3d 1050, 1074 (3d Cir. 1996).

There is the potential for a conflict of interest "whenever an attorney's loyalties are

divided, and an attorney who cross-examines former clients inherently encounters

divided loyalties." *Voigt*, 89 at 1050 (internal citations omitted). In *United States v.*

*Bradford*, the defendant was charged with conspiracy to possess with intent to distribute

in excess of 500 grams of cocaine. *United States v. Bradford*, 121 F. Supp. 2d 454, 454

(W.D. Pa. 2000). His attorney also represented a cooperating government witness, on a

statutory rape case, who was expected to testify at the defendant's drug trial. *Id.* at 455.

Counsel offered to withdraw from representing the cooperating witness, but the court still 

concluded that there was a potential conflict of interest. *Id.* The court, irrespective of

counsel's lack of knowledge concerning the cooperating witness's testimony, was

concerned about counsel's ability to effectively cross-examine the witness and attack his

credibility. *Id.* at 456. There was a concern that counsel "may be unwilling or unable to

vigorously cross-examine [the cooperating witness]. . . ." *Id.* The government's motion

to disqualify counsel was granted. *Id.* at 457.

## III.   Analysis

Defense counsel may be disqualified based on an actual conflict of interest or the

serious potential for a conflict of interest. Here, as noted by the defense, there is not an

actual conflict of interest. Defense counsel has stated that she does not have any

confidential information that is helpful to Blair, the subject matter of the representation of

Schenck is different than the subject matter of the current case, the representation of Schenck occurred four years prior to the current case, and the representation of Schenck has been terminated. When looking at the four factors outlined in *Burns*, they weigh against finding an actual conflict of interest. Since there is not an actual conflict of interest, a *Garcia* hearing is likely not required.



The Court, however, is still required to conduct an inquiry into the potential for a conflict of interest. The Court has to make the determination of whether or not to disqualify defense counsel based not on hindsight, but in the pre-trial context where trial strategy is not yet clear. Here, if defense counsel continues to represent Blair, it is possible that the proceedings will not seem fair to outside observers. As noted in *Voigt* and *Bradford,* there is a potential conflict of interest where an attorney has to cross-examine a former client. If this case goes to trial, it is possible that defense counsel will have to cross-examine Schenck and may not be able to vigorously cross-examine him due to the prior representation. Although it is not clear who will testify in the case, it is clear from the ATF interviews that Schenck and Blair could be used to testify against each other at trail. It is also possible that the two defendants could be in an adversarial position at the sentencing phase.

Although the Fifth Circuit has noted that defense counsel is often in the best position to determine whether she should be disqualified, that is not the case here. She is unaware whether Schenck plans to testify, and she likely will not be the one making that decision. She does not know about the possible content of Schenck's testimony, and she represented Schenck on an unrelated matter. Similar to *Bradford*, there is still the



**Government's Response to Disclosure of Prior Representation – Page 5**

potential for a conflict of interest.  As Blair noted in her interview with ATF agents, Blair

and Schenck do have a drug dealing relationship.  Although Schenck did not explicitly

mention Blair in his interview, certain facts in his interview did corroborate those

provided by Blair.  For example, both discussed the fact that Summers purchased drugs

from Schenck.  There is thus the potential for a serious conflict of interest.

In this case Blair has not provided a waiver stating that she wishes to retain

defense counsel even if there is a conflict of interest.  Even if Blair does sign such a

waiver, the administration of justice may outweigh the defendant's right to her chosen

counsel due to the potential for a serious conflict of interest.   Defense counsel, therefore,

may be disqualified due to the potential for a conflict of interest.

## IV.    Conclusion

In conclusion, the Court may find that defense counsel should be disqualified.

Although there is no actual conflict of interest, there is the potential for a conflict of

interest.

Respectfully submitted,

SHAWN SMITH
Assistant United States Attorney
801 Cherry Street, Suite 1700
Fort Worth, Texas, 76102
Telephone: (817) 252-5200
Facsimile: (817)  918-3094
SBOT #24033206

## CERTIFICATE OF SERVICE

I certify that I caused a copy of the foregoing to be served upon counsel of record
for the Defendant.

DATED this 6 day of July, 2015.

SHAWN SMITH
Assistant United States Attorney